**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sunset Spas of Arizona LLC, | No. CV-25-01822-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Chase Bank USA NA, | |
| Defendant. | |

Pending before the Court is Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss Plaintiff Sunset Spas of Arizona LLC's Complaint (Doc. 11). Though the Motion to Dismiss was initially responsive to Plaintiff's Complaint, Plaintiff has since filed a First Amended Complaint (Doc. 21). The Court asked the parties to provide supplemental briefing on the pending Motion to Dismiss with the First Amended Complaint as the operative complaint. (Doc. 18 at 1-3). For the reasons discussed below, Chase's Motion is granted, and Plaintiff is granted leave to amend pursuant to this order.

## BACKGROUND[1]

Plaintiff is an Arizona limited liability company, which sells "spas, hot tubs[,] and other aquatic recreation equipment" in Arizona and Nevada. (Doc. 21 at 1-2). Plaintiff is a customer of Chase—a nationally chartered bank incorporated in Delaware with its principal place of business in New York. (*Id.* at 1-2).

---

[1] This summary of the underlying facts accepts as true any non-conclusory factual allegations made by Plaintiff in its First Amended Complaint, with all inferences construed in the light most favorable to Plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

At issue here are charges made between July 2023 and December 2023 on Plaintiff's Chase credit card. (*Id.* at 2-3). The charges were to a "business or entity purporting to be 'Morgan's Trucking,'" and totaled $68,850.00 (the "Unauthorized Charges"). (*Id.* at 3). Morgan's Trucking is "a legitimate business entity known to" Plaintiff, but the charges were not paid to that entity. (*Id.* at 2-3). Rather, Plaintiff "believes the charges are the result of some unknown entity 'spoofing' or otherwise impersonating the legitimate" entity. (*Id.* at 3).

When Plaintiff became aware of these charges in December 2023, it notified Chase and "requested reversal . . . and a refund of the total amount of the Unauthorized Charges." (*Id.*). After conducting an investigation—which Plaintiff alleges was "cursory, incomplete, and negligent"—Chase refused to reverse or refund the Authorized Charges. (*Id.* at 3-4). Plaintiff further alleges that this refusal was made "without any legitimate reason or just cause." (*Id.*).

Under the contract governing Plaintiff's relationship to Chase as a Chase credit card holder (the "Cardholder Agreement"),[2] Chase agrees to "investigate" mistakes on Cardholder's statements "within 60 days after the suspected error appears on [the Cardholder's] billing statement." (Doc. 17-1 at 11). After investigating, Chase will "contact [the Cardholder] with [its] findings." (*Id.*). Similarly, if a Cardholder is "dissatisfied" with a purchase and has "attempt[ed] to resolve the problem with the merchant," the Cardholder can report it to Chase, which will then "research the problem and contact [the Cardholder] with [its] findings." (*Id.*).

Plaintiff filed its Complaint on May 27, 2025 (Doc. 1) and filed its First Amended Complaint on April 2, 2026 (Doc. 21). In the First Amended Complaint, Plaintiff makes

---

[2]Though considering evidence outside the pleadings generally requires the Court to "convert the 12(b)(6) motion into a Rule 56 motion for summary judgment," the Court can "consider certain materials—documents attached to the complaint, documents incorporated by reference . . . —without converting" the motion. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). The Cardholder Agreement underlies the relationship between the parties and the Unauthorized Charges. Because Plaintiff's claims necessarily rely on the Cardholder Agreement, the fact that Plaintiff does not mention the Cardholder Agreement in the First Amended Complaint does not prevent consideration of the document. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded on other grounds by* 28 U.S.C. § 1453.

five claims against Chase, four of which were included in the Complaint. (*Compare* Doc. 1, *with* Doc. 21). In Count I, Plaintiff alleges that Chase is liable for violating the Truth in Lending Act ("TILA") because it refused to refund the Unauthorized Charges. (Doc. 21 at 4-5). In Count II, Plaintiff alleges that Chase has violated § 204 of Article 4A of the Uniform Commercial Code ("UCC"). (*Id.* at 5-6). In Count III, Plaintiff alleges that Chase was negligent in its internal investigation of the Unauthorized Charges. (*Id.* at 6-7). In Count IV, Plaintiff alleges that Chase converted Plaintiff's funds—i.e., its "revolving line of credit"—by refusing to reverse and refund the Unauthorized Charges. (*Id.* at 7-8). Finally, in Count V, Plaintiff alleges that Defendant is liable for fraud for "misstatements or omissions" it made in response to Plaintiff's inquiries about the Unauthorized Charges and about Chase's investigation of those charges. (Doc. 21 at 8). Plaintiff seeks a refund of the Unauthorized Charges from Defendant plus interest and late fees, other compensatory damages (including fees and expenses that Plaintiff incurred in other business transactions because of the Unauthorized Charge's impact), punitive damages, attorneys' fees and costs, and any other just relief. (*Id.* at 5, 8-9).

Chase now moves to dismiss Plaintiff's First Amended Complaint. (Doc. 11; Doc. 17; Doc. 22).

## DISCUSSION

### I.    Legal Standard: Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

- 3 -

Indeed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing the complaint and any appropriately considered documents, the Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court will not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## II.    Application

### A.    Federal Claim—Count I: TILA Liability

Congress created TILA to "avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. Congress also created a cause of action against creditors "who fail[] to comply with any requirement" of the Act, but it requires plaintiffs to bring their actions "within one year from the date of the occurrence of the violation." *Id.* § 1640(a), (e). Plaintiff alleges that Chase violated § 1643 of TILA, which places limits on the liability of cardholders, by refusing to refund the $68,850.00 in Unauthorized Charges. (Doc. 21 at 4-5). A cardholder is only liable for unauthorized use of its credit card if the use was of an accepted credit card and occurred before the card issuer was notified that an unauthorized use had or might occur. 15 U.S.C. § 1643(a)(1)(A), (E). Moreover, the card issuer must have provided the cardholder with "adequate notice . . . of the potential liability," a means of notifying the card issuer of an unauthorized use, and a method to identify authorized users. *Id.* § 1643(a)(1)(C)-(D), (F). In any event, a cardholder's liability to the card issuer for unauthorized charges cannot exceed $50. *Id.* § 1643(a)(1)(B).

Chase argues that Plaintiff has failed to state a TILA claim because its suit was filed outside of § 1640(e)'s one-year statute of limitations. (Doc. 22 at 8-9). In the Ninth Circuit, "the limitations period in Section 1640(e) runs from the date of consummation of the transaction." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). This rule reflects

the fact that TILA's existence "impute[s] to borrowers knowledge of their rights as consumers of credit." *Id.* at 914.

Nonetheless, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the" TILA violation "if the general rule would be unjust or frustrate the purpose of the Act." *Id.* at 915. The "basic inquiry is whether tolling the statute in certain situations will effectuate the congressional purpose of" TILA. *Id.* (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 427 (1965)). The party attempting to toll the limitation must show (1) it pursued its rights with reasonable diligence before and after (2) the existence of some extraordinary circumstance that prevented a timely filing. *Smith v. Davis*, 953 F.3d 582, 599-600 (9th Cir. 2020) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Both reasonable diligence and the extraordinary nature of circumstances are assessed on a case-by-case basis. *Id.*

The transactions at issue here occurred between July 2023 and December 2023. (Doc. 21 at 2-3). And Plaintiff "immediately" notified Chase that the transactions were unauthorized.[3] (*Id.* at 3). Yet Plaintiff filed its Complaint in May 2025 (Doc. 1), over a year after the last transaction in December 2023. Citing cases from the Seventh Circuit and the District of Texas,[4] Plaintiff argues that Chase's refusal to refund the Unauthorized Charges should be considered the start of the limitations period rather than the transaction date. (Doc. 23 at 3-4). But Plaintiff does not provide a date of refusal, argue that it was subject to any extraordinary circumstances, nor assert that it acted with reasonable diligence in pursuing its rights under TILA. (*See* Doc. 21 at 2-5; Doc. 23 at 3). Because the Ninth Circuit treats the date of transaction as the start-date for TILA's statutory

---

[3] Plaintiff does not state whether it notified Chase of each Unauthorized Charge as the transactions occurred or if it notified Chase of all the Unauthorized Charges after all of the transactions had occurred. (*See* Doc. 21 at 2-4).

[4] Chase's arguments also rely on out-of-circuit cases. (Doc. 22 at 8-9). But one such case from the Sixth Circuit—*Borg v. Chase Manhattan Bank USA, NA*, 247 Fed. App'x 627, 635 (6th Cir. 2007)—relied on *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1043 (6th Cir. 1984), which the Ninth Circuit cited with approval in *King*, incorporating the Sixth Circuit's reasoning into Ninth Circuit precedent to hold that the limitations period runs from the date of transaction with equitable tolling available when appropriate. 784 F.2d at 914-15.

limitation and because Plaintiff has not argued that equitable tolling should apply in its favor, Plaintiff's TILA claim is time barred.

Accordingly, Chase's motion is granted as to Plaintiff's TILA claim. Nonetheless, because it may be possible for Plaintiff to amend its First Amended Complaint to allege facts that satisfy the requirements of equitable tolling and effectuate TILA's congressional purpose, Plaintiff is granted leave to amend this claim. Fed. R. Civ. P. 15(a)(2).

### B.    State Law Claims

#### 1.    Choice of Law

As an initial matter, the Court asked the parties to provide supplemental briefing on the choice-of-law governing Plaintiff's claims. (Doc. 18 at 2). Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). When deciding choice-of-law questions, Arizona courts follow the Restatement (Second) of Conflict of Laws (the "Restatement"). *See Landi v. Arkules*, 172 Ariz. 126, 130, 835 P.2d 458, 462 (Ct. App. 1992).

For contract claims, a choice-of-law provision is effective if the dispute between the parties could have been "resolved by an explicit provision in their agreement." *Cardon v. Cotton Lane Holdings*, 173 Ariz. 203, 208, 841 P.2d 198, 203 (1992) (quoting Restatement § 187(1)). Further, Restatement § 187(2) provides that, even if the contract could not have resolved a particular dispute, the parties' choice-of-law provision will apply "unless (1) the chosen state has no relationship to the parties and the transaction, or (2) the application of the chosen state's law would violate a fundamental policy of the forum state." *Id.* at 207, 841 P.2d at 202 (quoting Restatement § 187(2)).

In contrast, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision," but are "decided according to the" choice of law rules "of the forum state." *Winsor v. Glasswerks PHX, LLC*, 204 Ariz. 303, 306, 63 P.3d 1040, 1043 (Ct. App. 2003) (citing *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992)); *see also KPG Healthcare LLC v. LaborEdge LLC*, No. CV-25-00769, 2025 WL 3763929, at *8-9 (D. Ariz. Dec. 30, 2025) (describing circumstances in which

Arizona's choice of law rules apply contractual choice of law provisions to tort claims). That being said, "contractual choice of law provisions may apply to tort claims under certain circumstances." *Winsor*, 204 Ariz. at 307, 63 P.3d at 1044. "Whether a choice of law provision applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id.* (citation modified) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 2008)); *see, e.g.*, *KPG Healthcare*, 2025 WL 3764929 at *9; *Honeywell Int'l Inc. v. Forged Metals Inc.*, No. CV-19-03730, 2019 WL 5960063, at *2 (D. Ariz. Nov. 13, 2019) (applying a contractual choice of law provision to a tort claim because the tort claim relied on contract interpretation).

In this case, Plaintiff has both contract and tort claims, and the Cardholder Agreement contains a choice of law provision which plainly states that the "agreement and [Plaintiff's] account will be governed by federal law, as well as the law of Delaware, and will apply no matter where you live or use this account." (Doc. 17-1 at 13). First, Plaintiff's UCC claim, which sounds in contract, will be governed by Delaware law. Delaware is related to the parties because Defendant is incorporated in that state. (Doc. 21 at 1). Further, though Plaintiff relies on Arizona law, it also points out that there is no "material difference between Arizona [and] Delaware . . . law" (Doc. 23 at 2-3), such that the application of Delaware law will not violate any fundamental policy of Arizona. *Cardon*, 173 Ariz. at 207, 841 P.2d at 202. Plaintiff's UCC claim is therefore subject to the choice of law provision in the Cardholder Agreement. *Id.*

Second, as for Plaintiff's tort claims—for negligence, conversion, and fraud—the parties dispute whether Plaintiff's claims truly sound in tort or in contract law, whether the terms of the Cardholder agreement are relevant to these claims, and what substantive law should apply. (Doc. 22 at 3-7; Doc. 23 at 2-3). Though both parties claim that the outcome is the same under either Delaware or Arizona law, Defendant argues that Delaware law governs while Plaintiff asks the Court to apply Arizona law. (Doc. 22 at 3-7; Doc. 23 at 2-3). The Court need not resolve this dispute as to Plaintiff's fraud claim because substantive law is not necessary to resolve the motion as to that claim, as discussed below. In contrast,

substantive law is necessary to resolve the motion on Plaintiff's negligence and conversion claims. Though tort law—as opposed to contract law—applies to these claims, the adjudication of both claims would require interpretation of the Cardholder Agreement because that contract establishes the relationship between the parties. Indeed, because Plaintiff has not alleged any relationship between the parties beyond that defined by the Cardholder Agreement, the scope of Chase's duties to Plaintiff are limited to the scope of its duties within the contract—including conducting investigations like the one Plaintiff alleges was negligent. Similarly, the Cardholder Agreement governs the parties' creditor-debtor relationship and the transfer of funds between them—including the funds at issue in Plaintiff's conversion claim. Accordingly, the Court will apply the contractual choice of law provision, and Delaware law will apply to Plaintiff's tort claims as necessary.

### 2.    Count II: Liability Under Article 4A of the UCC

Plaintiff alleges that Chase has violated Article 4A of the UCC, which governs "funds transfer," Del. Code tit. 6 § 4A-101 *et seq.*, by not refunding the Unauthorized Charges to Plaintiff's credit card. (Doc 21 at 5-6). But Plaintiff's argument fails. Under the plain language of the statute, the Unauthorized Charges cannot be considered a "funds transfer."

A funds transfer is a "unique method of payment to be governed by unique rules that address the particular issues raised by" it. U.C.C. § 4A-102 cmt. (Unif. L. Comm'n 2022).[5] It is a "series of transactions" beginning with a payment order made for the purpose of making a payment to the order's beneficiary. Del. Code tit. 6 § 4A-104(a). A payment order is an instruction sent to a bank "to pay, or to cause another bank to pay, a fixed or determinable amount of money to [the] beneficiary." *Id.* § 4A-103(1). The sender must "directly" transmit the order to the bank without any conditions for payment (aside from

---

[5] "In interpreting a statute, [Delaware state courts] give considerable deference to an official commentary written by the statute's drafters and available to the General Assembly before the statutory enactment." *Kallop v. McAlister*, 678 A.2d 526, 530 (Del. 1996); *see also Burkhart v. Genworth Fin., Inc.*, 275 A.3d 1259, 1273 n.82 (Del. Ch. 2022) (noting that Delaware state courts may consider "uniform law comments as persuasive authority" even when such comments are not given *Kallop* deference). The Uniform Law Commission's 2022 comments were available in 2023 when the Delaware General Assembly amended its UCC provisions. Act of Aug. 18, 2023, 84 Del. Laws ch. 174.

the time of payment) and reimburse the bank—either through direct payment or the bank's debiting of the sender's account. *Id.* § 4A-103(1)(i)-(iii).

Because the *sender* must initiate a funds transfer, *id.* § 4A-103(iii), this definition of payment order "exclude[s] from Article 4A payments made by check or credit card." U.C.C. § 4A-104 cmt. 5. Indeed, a credit card charge is a transmission "to the creditor who then presents" a request for payment to the debtor's bank. *Id.* Because the debtor does not "directly" transmit instructions to its bank, a credit card charge does not qualify as a "payment order" under the statutory definition. *See* Del. Code tit. 6 § 4A-103(a)(1)(iii).

Plaintiff alleges that Chase violated § 4A-204, which requires a bank to refund certain unauthorized payment orders. (Doc. 21 at 6). Though the transactions at issue here were unauthorized, they were *charges* to Plaintiff's credit card and not payment orders. Even assuming that all other elements of Plaintiff's claim are satisfied, the unauthorized charges cannot be considered payment orders because Plaintiff was not the *sender* and did not directly initiate the series of transactions. Del. Code tit. 6 § 4A-103(a)(1). As such, Chase is correct that Plaintiff has no legally cognizable UCC claim.

Under the plain language of Delaware's statute—which excludes the transactions at issue from Article 4A—there are no facts that Plaintiff could allege to state a plausible claim based on the Unauthorized Charges. Accordingly, any amendment would be futile and Plaintiff's UCC claim is dismissed without leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (denying leave to amend because futility and the chance to previously amend "plainly reveal[ed]" that plaintiff's claim should be dismissed with prejudice).

### 3.    Count III: Negligence

Plaintiff alleges that Chase was negligent in conducting its investigation of the Unauthorized Charges, which resulted in Chase's refusal to issue a refund. (Doc. 21 at 6-7). Chase challenges this claim on two bases: (1) Plaintiff's failure to allege that Chase owed it any non-contractual duty and (2) the economic loss doctrine. (Doc. 11 at 6-7). Because Delaware's economic loss rule plainly bars Plaintiff's claim, the Court grants

Chase's motion to dismiss without considering the issue of duty and grants Chase's motion to dismiss.

Plaintiff alleges that "Chase was negligent in conducting whatever investigation it commenced after Sunset Spas notified it of the fraudulent charges," resulting in Chase's failure to refund the Unauthorized Charges. (Doc. 23 at 5). Chase correctly asserts that the economic loss rule is implicated by Plaintiff's claim, and further, is correct that Delaware's economic loss rule bars Plaintiff's tort claim, limiting Plaintiff to only contract remedies.

"The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where . . . the only losses suffered are economic in nature." *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1196 (Del. 1992), *abrogated in part by* 6 Del. C. §§ 3651-52; *Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 710 (D. Del. 2010) ("The economic loss doctrine precludes recovery in negligence for losses that are solely economic in nature."). Where "no personal injury or property damage has been alleged" and a plaintiff's "cause of action for negligence rests entirely upon an economic loss theory," the plaintiff's claim "fails as a matter of law" because "purely economic losses are unrecoverable" under Delaware law. *Sterling v. Beneficial Nat'l Bank NA*, No. 91C-12-005, 1994 WL 315365, at *3 (Del. Super. Ct. Apr. 13, 1994) (citing *Danforth*, 608 A.2d 1194); *Bell Helicopter Textron, Inc. v. Tridair Helicopters, Inc.*, 982 F. Supp. 318, 322 n.5 (D. Del. 1997) (describing *Sterling* as a case "in which the Delaware Superior Court found that a negligence action was barred by the economic loss doctrine where a bank negligently mishandled a loan and subordination agreement," and "plaintiffs had not alleged any property damage claims, but rather purely economic loss caused to their bank account itself"). For pure economic loss, a plaintiff is "limited to remedies under the Uniform Commercial Code, and may not proceed in tort." *Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F. Supp. 2d 564, 569 (D. Del. 2002) (citing *Danforth*, 608 A.2d at 1195-97).

Here, Plaintiff alleges only economic loss stemming from a negligent investigation of the Unauthorized Charges—an investigation which Chase agreed to perform under the Cardholder Agreement. (Doc. 11 at 6; Doc. 13 at 7; Doc. 17-1 at 11). These losses are unrecoverable under Delaware tort law. *Sterling*, 1994 WL 315365, at *3 (citing *Danforth*, 608 A.2d 1194). In other words, because Plaintiff's negligence claim "rests entirely upon an economic loss theory," it "fails as a matter of law." *Id.*

As such, Plaintiff's negligence claim is dismissed without leave to amend as any amendment would be futile. *Allen*, 911 F.2d at 373 (denying leave to amend because futility and the chance to previously amend "plainly reveal[ed]" that plaintiff's claim should be dismissed with prejudice).

### 4.    Count IV: Conversion

Similarly, Plaintiff has failed to state a claim of conversion against Chase. In Delaware, "any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it, is a conversion." *Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 525 (D. Del. 2013) (quoting *Drug Inc. v. Hunt*, 168 A. 87 (1933)). To maintain such an action, the plaintiff must have "had a property interest in the converted goods[,] . . . had a right to possession of the goods[,] and . . . sustained damages." *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988). Generally, a conversion claim arising from a breach of contract is barred; a plaintiff alleging such a claim must sue in contract. *Kyle*, 987 F. Supp. 2d at 525 (citing *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 889 (Del. Ch. 2009)). As such, "an action for conversion of money will lie only where there is an 'obligation to return the identical money'"—i.e., "only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally." *Goodrich*, 542 A.2d at 1203. When these conditions are not met, any claim for conversion of money "must be dismissed." *Id.*

Here, Plaintiff alleges that it "has the right to the availability of funds on its revolving line of credit," and that Chase converted $68,850.00 of those funds by refusing to refund the Unauthorized Charges. (Doc. 13 at 8; Doc. 21 at 7-8). In response, Chase

argues that the funds[6] at issue cannot be the subject of a conversion action because (1) they cannot "be described, identified or segregated," (2) Chase had no "obligation to treat the funds in a specific manner," and (3) Plaintiff does not show that any injury could not be remedied by the payment of funds generally. (Doc. 11 at 10; Doc. 17 at 6; Doc. 22 at 12-13). Though Plaintiff does describe the funds at issue—the $68,850.00 of Unauthorized Charges paid to an entity purporting to be Morgan Trucking between July 2023 and December 2023—and makes the conclusory assertion that it had an immediate possessory interest in those funds, it makes no allegation that the funds can be identified or segregated, or that Chase had an obligation to return the identical money. (*See* Doc. 13 at 8; Doc. 21 at 7-8). Specifically, Plaintiff does not explain how funds within a "revolving line of credit" could be discretely identified or segregated from other funds, or describe any obligation owed to it by Chase beyond the operation of their general debtor-creditor relationship. Because Plaintiff's "claim could be satisfied by a general monetary payment, . . . [it] cannot be enforced." *Kyle*, 987 F. Supp. 2d at 526.

Accordingly, Plaintiff's claim "must be dismissed." *Goodrich*, 542 A.2d at 1203. Given the nature of the funds at issue here and the nature of the parties' relationship under the Cardholder Agreement, Plaintiff has no plausible claim and any further amendment would likely be futile. As such, Plaintiff's conversion claim is dismissed without leave to amend. *Allen*, 911 F.2d at 373 (denying leave to amend because futility and the chance to previously amend "plainly reveal[ed]" that plaintiff's claim should be dismissed with prejudice).

### 5. Count V: Fraud

Finally, Plaintiff has failed to state a claim for fraud because it has not "state[d] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

"[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement

---

[6] Chase also asserts that Plaintiff's allegations do not involve any "funds" but rather involve "an allegedly unauthorized debt" (Doc. 17 at 7) yet does not elaborate on the significance of this distinction to Plaintiff's conversion claim.

that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.2d 1097, 1103 (9th Cir. 2003)).  Indeed, "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Id.* at 1124 (*quoting Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation modified).

Therefore, to state a claim for fraud, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).  In other words, while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must "state the time, place, and specific content of the false representation as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Here, Plaintiff's allegations of fraud are a mere "formulaic recitation of the elements of a [fraud] cause of action," *Twombly*, 550 U.S. at 555, with insertions of "Chase" and "Sunset Spas" into each element of the fraud claim. (Doc. 13 at 9; Doc. 21 at 8).  Plaintiff only avers that "Chase made misstatements or omissions . . . regarding Chase's compliance with various legal requirements surrounding the reporting of unauthorized charges" without specifying the content of the allegedly fraudulent statements, without stating why those statements were false, and without providing "when, where, and how" these statements were made. (Doc. 21 at 8); *Moore*, 966 F.3d at 1019.

Accordingly, though Plaintiff lists the elements of fraud, it does not do so in a manner sufficiently specific to satisfy Rule 9(b), and thus, fails to state a plausible fraud claim.  Defendant's Motion to Dismiss is thus granted as to Count V.  Because it may be possible, however, for Plaintiff to amend its First Amended Complaint to allege fraud with

the degree of specificity required by Rule 9(b) as described above, it is granted leave to amend this claim.  Fed. R. Civ. P. 15(a)(2).

<strong>CONCLUSION</strong>

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 11) is **GRANTED**.  Should Plaintiff elect to file an amended complaint pursuant to this order, Plaintiff shall do so **within twenty-one (21) days of the filing of this order.**

Dated this 21st day of May, 2026.

_____
G. Murray Snow
Senior United States District Judge

- 14 -